In the Interest of T.N. and M.N. Children

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-350-CV

IN THE INTEREST OF T.N.

AND M.N., CHILDREN 

------------

FROM THE 211
TH
 DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

After a jury trial, the trial court ordered that the parental rights of J.N. (“Mother”) and S.N. (“Father”) to the children T.N. and M.N. be terminated, based on the jury findings that the termination was in the children’s best interest, that the parents had knowingly placed or allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, and that the parents had knowingly engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children.
(footnote: 1)  The parents appeal from the trial court’s order.  Because we hold that the trial court did not err and that the evidence is factually sufficient to support the termination of Father’s parental rights, we affirm the trial court’s order of termination.

I.  Mother’s Issues

Mother does not challenge the jury findings on the endangerment grounds or best interest.  Instead, she raises two issues complaining of the children’s attorney’s performance and one issue complaining about the trial court’s rulings on her challenges for cause.

A.  
Standing to Complain of Children’s Attorney

In her first issue, Mother complains that the children’s attorney ad litem’s failure to perform statutorily mandated duties violated her due process and equal protection rights under the state and federal constitutions.  In her second issue, she complains that the children’s attorney ad litem’s ineffective assistance violated Father’s and her due process rights.  Mother does not point to any evidence in the record demonstrating how her constitutional rights were violated.  A party may not complain of errors which do not injuriously affect her or which only affect the rights of others.
(footnote: 2)  An exception exists when the appellant is deemed to be a party under the doctrine of virtual representation, which requires among other elements that the appellant and, in this case, Father and the children, have identical interests.
(footnote: 3)  The record does not show that Mother, Father, and the children have identical interests, nor does Mother claim that they do.  Instead, without presenting any evidence that she suffered harm therefrom, Mother seeks to exploit the alleged deficiencies of the children’s counsel for her own use on appeal.

The record demonstrates that the children’s attorney ad litem did not meet with his clients until three days after trial began.  It also demonstrates no evidence of the children’s desires about termination.  While we do not reach the substance of Mother’s complaint, we are appalled that any attorney, much less one appointed to represent the interests of vulnerable children, could fail to meet with his clients, not to mention fail to ascertain his clients’ trial objectives, until such trial was well underway.

Nevertheless, Mother does not have standing on appeal, nor did she at trial, to complain about the performance of the children’s attorney on the children’s behalf.  At the time of trial, CPS had temporary managing conservatorship, including the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child.  Mother did not have that right then, nor does she now.  Further, Mother has no standing to complain about the children’s lawyer on her own behalf.
(footnote: 4)  Even though 
no
 party’s trial counsel elicited any evidence about the children’s desires, we note that Mother does not challenge her own trial counsel’s effectiveness.
(footnote: 5)  Additionally, Mother does not have standing on appeal to complain about a violation of Father’s due process rights.
(footnote: 6)  We overrule Mother’s first two issues.

B.  Unpreserved Challenges for Cause

In Mother’s third issue, she contends that the trial court erred in denying her challenges for cause to panel members who admitted a bias against her.  At trial, Mother did not specifically identify an objectionable juror who would serve on the jury because of the trial court’s failure to grant the challenges for cause or to allow her additional peremptories.  She did not object to the jury as seated.  Because Mother did not identify a specific, objectionable juror, she failed to preserve this issue for appeal.
(footnote: 7)  We overrule Mother’s third issue.

II. Father’s Issues

Father raises four issues, complaining that the evidence is factually insufficient to support the jury findings on endangerment and best interests’, that the trial court abused its discretion in admitting the testimony of a witness who was disqualified as an expert, and that the trial court erred in denying his challenges for cause.

A.  Unpreserved Challenges for Cause 

In Father’s first issue, he contends that the trial court erred in
 denying his challenges for cause to panel members who admitted bias in favor of CPS. 
 Because, like Mother, Father failed to preserve his complaint by identifying a specific, objectionable juror who would be on the jury because of the trial court’s failure to grant the challenges for cause or to allow Father additional peremptories and did not object to the jury as seated,
(footnote: 8) we overrule Father’s first issue.

B.  
Expert’s Lay Testimony

In Father’s fourth issue, he contends that the trial court abused its discretion in admitting expert opinion testimony regarding his and Mother’s fitness as parents from a witness the court wholly failed to qualify as an expert.

Our review of the record reveals that the trial court ruled that Shelly Butler, a licensed professional counselor, could not give any expert opinions, but she could testify as to what she observed, heard, or was told.  That is, the trial court did not prohibit the witness from giving the same testimony that a lay witness would be allowed to give.
(footnote: 9)  Butler testified, over objection, that Mother reported past separations from Father, that the parents’ behavior was “childlike, argumentative, and verbally abusive,” and that the parents used “humiliating words” toward each other.  We hold that these opinions were admissible as lay testimony, and the trial court did not abuse its discretion by admitting them.  We overrule Father’s fourth issue.

C. 
 
Findings on Endangerment

In Father’s second issue, he contends that the evidence is factually insufficient to support the jury’s findings that he knowingly placed or allowed his daughters to remain in conditions or surroundings that endangered their physical or emotional well-being or that he engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being.  The evidence shows that Father repeatedly left the children with their paternal grandmother, even though he knew she abused alcohol and other substances while the children were under her care and had had two wrecks while she was driving under the influence of alcohol or drugs with the children in the car.  The children were repeatedly observed unsupervised outside their grandmother’s home, once at night, when the older child struggled to keep her toddler sister out of the street.  Father continued to leave his children with his mother even after the police, and later CPS, warned him that his mother was not an appropriate caregiver for the children because of her substance abuse problems.

The evidence also shows that Father repeatedly left the children with Mother, even though he knew that she had abused alcohol while the children were under her care; had driven to his workplace while intoxicated, with the children in the car, and had left one of the children in the car with the windows up and the engine off on a summer afternoon; and, on a separate occasion, had been in a car wreck while under the influence of alcohol with the children unrestrained in the back seat.

The evidence also shows that Father was emotionally and physically abusive to the grandmother in front of the children and that he and Mother physically fought in front of the children.  Applying the appropriate principles and standard of review,
(footnote: 10) we hold that the evidence is factually sufficient to support the jury findings on endangerment by conduct.
(footnote: 11)  We overrule Father’s second issue.

D.  Best Interest Findings

In his third issue, Father contends that the evidence is factually insufficient to support the jury’s findings that termination of his parental rights is in the children’s best interest.  In addition to the evidence of endangerment recited above, the evidence also shows that Father lacks stability in many other ways.  He did not have a stable employment history and was unemployed at the time of trial.  The evidence shows that the couple’s parents had provided much of the family’s financial support throughout the marriage.  Father also did not have a stable housing history.  At the time of trial, he had been evicted from his apartment, was staying with Mother, but had a fight resulting in her arrest on the evening before the last day of trial.  The evidence also shows that Father did not have a stable relationship with Mother.  Testimony showed that they had separated four or five times, and even the maternal grandmother testified that she was concerned about the couple’s stability and the environment they provided for the children.  Additionally, while Father testified that he would leave Mother if her rights were terminated and his were not, he also testified that he loved her and wanted their marriage to work.  Similarly, while he claimed that he would not leave the children with his mother anymore, he also indicated his belief that she was no longer a danger to the children, and his history shows that he repeatedly left the children with her even when he knew she was a danger.

Father’s participation in CPS-recommended programs was less than stellar.  He completed parenting classes but did not complete counseling.  He missed some visits with the children, and he refused to take at least one drug test.

Disturbingly, there was no evidence about the children’s desires nor any specific evidence about particular persons who CPS believed were qualified to offer the children a permanent placement or adoption.  There was no evidence showing a commitment to place the children together in the future, or, at the very least, to maintain their relationship through letters, telephone calls, and visits.  At the time of trial, the children were thriving in a foster home with a couple who were more like surrogate grandparents.

But Father also had no concrete plans for the children.  He had no apartment at the time of trial and had been recently evicted, but he claimed that he would get his own apartment within the week if he regained custody of the girls, courtesy of the financial support of his mother, his mother-in-law, and his uncle.  He also said that he and the girls could stay with his uncle, who did not testify.  Regarding daycare, he planned for his uncle and the maternal grandmother to watch the girls, or he had heard of subsidized daycares.  He also testified that he would provide for the girls’ basic needs from the financial support of relatives.  The maternal grandmother testified that the children did not need to be with their parents “right now” because “they are still living the way they always have.”

Based on the appropriate standard of review,
(footnote: 12) and considering the 
Holley
 factors,
(footnote: 13) we hold that the evidence is factually sufficient to support the jury’s findings that the termination of Father’s parental rights was in the best interest of the children.  We overrule Father’s third issue.

III. Conclusion

Having overruled all of the parents’ issues, we affirm the trial court’s order of termination.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  July 22, 2004

FOOTNOTES
1:
See
 
Tex. Fam. Code Ann.
 § 161.001(1)(D), (E), (2) (Vernon 2002).

2:
Tex. Workers' Comp. Ins. Fund v. Mandlbauer
, 988 S.W.2d 750, 752 (Tex. 1999); 
Buckholts Indep. Sch. Dist. v. Glaser
, 632 S.W.2d 146, 150 (Tex. 1982); 
Jackson v. Fontaine's Clinics
,
 Inc.
, 499 S.W.2d 87, 92 (Tex. 1973).

3:
See
,
 e.g.
,
 Gunn v. Cavanaugh
, 391 S.W.2d 723, 725 (Tex. 1965);  
Jernigan v. Jernigan
, 677 S.W.2d 137, 140 (Tex. App.—Dallas 1984, no writ). 

4:
See
 
Mandlbauer
, 988 S.W.2d at 752; 
Glaser
, 632 S.W.2d at 150; 
Jackson
, 499 S.W.2d at 92
;
 see also 
In re Frank L.
, 97 Cal. Rptr. 2d 88,
 
81 Cal. App. 4th 700, 703 
(Cal. Ct. App. 2000) (holding that parents must actually make a showing that ineffective assistance of the children’s attorney affected the parents’ interest to have standing to raise the claim).

5:
See
 
In re M.S.
, 115 S.W.3d 534, 544 (Tex. 2003) (parents in termination cases are entitled to effective assistance of counsel).

6:
See Mandlbauer
, 988 S.W.2d at 752; 
Glaser
, 632 S.W.2d at 150; 
Jackson
, 499 S.W.2d at 92.

7:
See
 
Hallett v. Houston N.W. Med. Ctr.
,
 
689 S.W.2d 888, 890 (Tex. 1985)
; 
Pharo v. Chambers County
, 
893 S.W.2d 264, 268 (Tex. App.—Houston [1
st
 Dist.] 1995), 
aff’d
, 922 S.W.2d 945 (Tex. 1996).

8:
See Hallett
,
 
689 S.W.2d at 890
; 
Pharo
, 
893 S.W.2d at 268.

9:
See 
Tex. R. Evid.
 701.

10:
See Santosky v. Kramer
, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982); 
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002)
; Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987); 
Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985); 
Richardson v. Green
, 677 S.W.2d 497, 499 (Tex. 1984)
; 
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980).

11:
See 
Tex. Fam. Code Ann.
 § 161.001(E); 
In re
 
A.R.R.
, 61 S.W.3d 691, 698 (Tex. App.—Fort Worth 2001, pet. denied) (holding that sufficient evidence of one conduct ground, coupled with sufficient proof of best interest, is enough for termination), 
disapproved of on other grounds by
 
C.H
., 89 S.W.3d at 26.

12:
See Santosky
, 455 U.S. at 758-59, 102 S. Ct. at 1397; 
C.H.
, 89 S.W.3d at 25
;
 Boyd
, 727 S.W.2d at 533; 
Holick
, 685 S.W.2d at 20; 
Richardson
, 677 S.W.2d at 499; 
G.M.
, 596 S.W.2d at 847.

13:
See Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976).