# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00585-CV

**S. M. M. and K. A. M., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 425TH JUDICIAL DISTRICT
### NO. 10-3151-F425, HONORABLE MARK J. SILVERSTONE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

S.M.M. ("Sarah") and K.A.M. ("Keith") appeal from the trial court's orders terminating their parental rights to their minor child, K.M.[1] On appeal, Sarah and Keith assert that (1) the evidence is legally and factually insufficient to terminate their parental rights and (2) the trial court abused its discretion in failing to appoint Keith an attorney for trial. We affirm the trial court's orders of termination.

## BACKGROUND

On February 25, 2010, the Texas Department of Family and Protective Services (the "Department") was informed that Keith had been arrested for driving "high on PCP" while K.M.,

---

[1] For the sake of convenience and privacy of the parties, we refer to the parents and other adult family members by fictitious names. *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2011).

his five-month-old son, was in the vehicle. On August 5, 2010, the Department was informed that Keith was arrested again for driving while intoxicated while K.M., then eleven months old, was in the vehicle.[2] In October of 2010, the Department was informed that Sarah had been arrested for selling crack cocaine to an undercover police officer in her car while K.M. was in the back seat. The Department learned that Keith was with Sarah at the time of her arrest, but that he was not charged with selling crack cocaine because he was not present during the sale.

On November 4, 2010, the Department filed an original petition for protection of K.M., for conservatorship, and for termination of Sarah's and Keith's parental rights. K.M. was removed from Sarah's and Keith's home and ultimately placed with his current foster parents, "Larry" and "Rita."[3] On November 19, 2010—just over two weeks after K.M. was removed from his home—Keith was arrested for possession of a controlled substance.

An adversary hearing was conducted on November 22, 2010, after which the trial court issued a temporary order naming the Department as K.M.'s temporary managing conservator and placing K.M. with his foster parents. The Department created a family service plan through which Keith and Sarah could work toward regaining custody of K.M. *See* Tex. Fam. Code Ann. § 263.106 (West 2008). Keith was subsequently convicted of driving while intoxicated and possession of a controlled substance and sentenced to thirteen months' incarceration. He was

---

[2] At trial, the Department's case worker conceded that the Department should have done something more to investigate K.M.'s safety after Keith was arrested twice for driving while intoxicated with a minor in the car, but suggested that the "investigation was stuck on somebody's workload."

[3] Larry is the pastor at Sarah's and Keith's church, and he and his wife Rita agreed to become K.M.'s foster parents.

released on December 22, 2011. Similarly, Sarah was convicted of distribution of a controlled substance and sentenced to seventeen months' incarceration. She was released on May 22, 2012.

The final hearing on the Department's petition to terminate Sarah's and Keith's parental rights began on June 5, 2012. At the outset of this two-day bench trial, the Department informed the trial court that Keith was not represented by an attorney. Counsel for the Department explained that she and K.M.'s attorney ad litem told Keith months before trial that if he wanted an attorney to be appointed to him, he would need to contact the court, but that Keith failed to do so. Keith conceded that he was told that he needed to request an attorney from the court, but claimed he did not know the court's address and would not know how to write a letter requesting an attorney. Keith asserted that he was indigent and he needed an attorney to assist him. The Department explained that Keith had over six months to request an attorney and "[w]e are beyond the twelfth hour at this point." The trial court proceeded with the bench trial, and Keith was not represented by counsel.

After opening statements, the Department called Melinda Parker, the licensed counselor who had performed "psychosocial assessments" and counseling sessions for Sarah and Keith. Parker testified that Keith began using narcotics when he was thirteen years old and had used narcotics extensively throughout his life. She noted that Keith had participated in an intensive twenty-eight day rehabilitation program twice in his past, but had returned to using narcotics. Similarly, Parker testified that Sarah began smoking marijuana when she was nine years old and had used crack cocaine daily since 2006.[4] Nonetheless, Parker believed that Sarah and Keith "have

---

[4] Parker stated that Sarah spent between $300 and $400 a day on crack cocaine and believed that Sarah was selling drugs to pay for her habit.

a better chance than a lot of people" of not relapsing because neither of them had mental disorders that would lead them to use drugs as a form of self-medication. However, Parker conceded that she was not a psychiatrist and was not qualified to diagnose mental disorders.

Next, the Department called Keith to testify. Keith admitted that he had been convicted of at least twelve offenses in his life, including drug possession, assault family-violence, and driving while intoxicated with a minor in the vehicle. Keith explained that he dropped out of high school to sell narcotics because it was an easy way to make money, and it "didn't dawn on" him to stop selling narcotics even after he had two children with two different women. Keith stated that in 2006, the Department succeeded in terminating his parental rights to his second child while Keith was incarcerated for assaulting the child's mother. After he was released in 2006, Keith began working as a commercial painter, then day laborer, and later as an employee at Goodwill. However, Keith did not retain any of these jobs longer than two years, and he continued to sell narcotics during this time to supplement his income.

Keith testified that he began dating Sarah in 2006 or 2007, and they used drugs together from the beginning of their relationship. While he had temporary periods of sobriety, he admitted that he "backslid" before K.M. was born and continued to use PCP prior to K.M.'s removal. Keith stated that he had PCP "in his system" when he was arrested for driving while intoxicated with K.M. in the car. He also stated that he was in the car with Sarah and K.M. the night that Sarah was arrested for selling crack cocaine, that he knew she was selling crack cocaine, and that he knew she had crack cocaine with her, but he claimed he did not know that she was going to a drug sale that night. Finally, Keith testified that, beginning with his most recent incarceration,

4

he had been sober for twenty months and that he felt that he and Sarah could now provide a safe home for K.M.

Next, the Department called Sarah to testify. Sarah stated that she experimented with marijuana when she was nine, that she had been selling cocaine since she was fifteen or sixteen, and that she was incarcerated for robbery when she was seventeen. Sarah had her first child when she was twelve years old, and she ultimately had five children, the youngest being K.M. Sarah relinquished custody of her first two children to her grandmother, her third child was placed with her brother and sister-in-law, and Sarah split custody of her fourth child with Sarah's stepfather. Throughout her life, Sarah had been arrested at least thirteen times for offenses including forgery, robbery, drug possession, and evading arrest. Several of these arrests resulted in convictions and prison sentences, the most recent of which was for her distribution-of-a-controlled-substance conviction.

Sarah testified that when she began dating Keith she knew about his criminal history and his drug addiction. She also admitted that Keith was physically and emotionally abusive toward her in the past. Sarah testified that after K.M. was born, she was under financial pressure, and she began selling narcotics over a seventy-day period, culminating in her arrest in October of 2010. While in jail for this final conviction, Sarah participated in and completed several programs relating to substance abuse, parenting skills, and behavior modification. She was released from prison less than three weeks before the bench trial, and during that time she sought out and participated in counseling and aftercare programs. Sarah also returned to Regency Beauty Institute to work toward receiving her cosmetology license.

The Department also called Keith's previous counselor and K.M.'s foster parents. K.M.'s foster mother testified that K.M. is a "wonderful little boy," that he refers to his foster parents

5

as "Mama" and "Dad," that he tells them he loves them and his foster-siblings, and that he considers his foster-parents' home to be his home. Finally, the Department called the caseworker who oversaw K.M.'s removal and monitored Keith's and Sarah's compliance with their family service plans. The caseworker testified that in the five months since his release from jail, Keith had not completed some of the requirements of his service plan, he was not involved in ongoing treatment for substance abuse, and he was "sporadic with attending" his faith-based recovery group. However, the caseworker conceded that Sarah "got as much done as she could" during her incarceration and the brief time since she was released.

Sarah called her ex-sister-in-law to testify about changes she claimed Sarah had made in her life. Sarah's ex-sister-in-law was foster-mother to Sarah's third child from the time he was born until he reached adulthood. The ex-sister-in-law had routinely interacted with Sarah since she took custody of Sarah's child. She testified that Sarah has "grown and matured" since her past and that she "understands what it means to be a mother." However, Sarah's ex-sister-in-law also testified that Sarah abducted her third child from the sister-in-law's home in 2009 and then abandoned him "with another minor child behind a dumpster."

Following summations, the trial court concluded the bench trial on the Department's petition to terminate Keith's and Sarah's parental rights. The trial court subsequently entered an order terminating Keith's and Sarah's parental rights. This appeal followed.

## DISCUSSION

Sarah and Keith raise two issues on appeal. First, they claim that the evidence is legally and factually insufficient to support the trial court's termination of their parental rights.

Second, Keith argues that the trial court abused its discretion in failing to appoint him an attorney when he requested one at the beginning of the final hearing.[5] We address these two issues separately.

**Sufficiency of the evidence**

In their first issue on appeal, Sarah and Keith claim that the evidence is legally and factually insufficient to support the trial court's termination of their parental rights. To terminate the parent-child relationship, the trial court, acting as factfinder, must have found clear and convincing evidence that (1) the parent has engaged in conduct set out as statutory grounds for termination and (2) termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). The family code defines clear and convincing evidence as the "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008). We will review the sufficiency of the evidence to support these two findings separately.

*Standard of review*

"The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In a termination case, we review the legal sufficiency of the evidence by considering all of the evidence in the light most

---

[5] Sarah lacks standing to complain about the alleged deprivation of Keith's right to appointed counsel. *See In re T.N.*, 142 S.W.3d 522, 524–25 (Tex. App.—Fort Worth 2004, no pet.) (concluding mother lacked standing to complain about child's attorney ad litem's allegedly deficient performance). Therefore, we address this second issue only as it pertains to Keith.

favorable to the factfinder's determination and will uphold a finding if a reasonable factfinder could have formed a firm conviction that its finding was true. *Id.* To give appropriate deference to the trial court's conclusions, we must assume that the court resolved disputed facts in favor of its finding if it could reasonably do so. *Id.* An appellate court should disregard evidence a reasonable factfinder could have disbelieved or found incredible. *Id.*

When reviewing the factual sufficiency of the evidence in a parental termination case, we view all of the evidence in a neutral light and determine whether a reasonable factfinder could form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d at 18–19. We assume that the trial court resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard evidence that a reasonable factfinder could have disbelieved or found incredible. *In re J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable factfinder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the trial court could not reasonably have formed a firm belief or conviction. *Id.*

*Statutory grounds for termination*

At trial, the Department's petition for termination alleged that Sarah's and Keith's parental rights should be terminated pursuant to subsections (D), (E), and (O) of section 161.001(1) of the family code. Under these sections, the trial court must find by clear and convincing evidence that a parent:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

8

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; [or]

 . . .

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [Department] . . . .

Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O) (West Supp. 2012). In its order terminating the appellants' parental rights, the trial court found that clear and convincing evidence existed to support all three statutory grounds for termination.

On appeal, Sarah and Keith "concede that there exists factual and legal sufficiency of the evidence [sic] for the trial court to have proven Tex. Fam. Code Ann. § 161.001(1)(D), and (E), but not (O) . . . ." According to appellants, the evidence shows that they completed or nearly completed all of the requirements of their family service plans, and whatever requirements they were unable to complete were the result of their incarcerations prior to the final hearing. Thus, Sarah and Keith claim that there was insufficient evidence to support the trial court's findings that statutory ground (O) supports termination of their parental rights. *See id.* § 161.001(1)(O).

Only one statutory ground is necessary to support a judgment in a parental-rights-termination case. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, "we must affirm the termination order if the evidence is sufficient to support termination on any one of the grounds found by the district court." *Pruitt v. Texas Dep't of Family & Protective Servs.*, No. 03-10-00089-CV, 2010 WL 5463861, at *4 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.). As noted above, Sarah and Keith concede that there is sufficient evidence to support the trial court's findings with

9

respect to subsections (D) and (E). *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E). Thus, we need not address appellants' complaint that there is insufficient evidence to support the trial court's findings with respect to subsection (O). *See id.* § 161.001(1)(O); *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied) (concluding appellate court need not address sufficiency challenge when appellant failed to challenge sufficiency of evidence to support one of statutory grounds for termination). We conclude that there is legally and factually sufficient evidence to support the trial court's finding that a statutory ground for termination exists in this case.

*Child's best interest*

Having concluded that there is sufficient evidence that a statutory ground for termination exists, we must next examine whether there is legally and factually sufficient evidence that termination of Sarah's and Keith's parental rights is in K.M.'s best interest. In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). These factors include (1) the child's wishes, (2) his emotional and physical needs now and in the future, (3) emotional or physical danger to the children now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent which indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from finding that termination

10

is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. While no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved on other grounds in In re J.F.C.*, 96 S.W.3d at 267 n.39; *Rios v. Texas Dep't of Family & Protective Servs.*, No. 03-11-00565-CV, 2012 WL 2989237, at *8 (Tex. App.—Austin July 11, 2012, no pet.) (mem. op.).

In this case, there was extensive testimony concerning whether termination of Sarah's parental rights was in K.M.'s best interest. While we do not recite all of the testimony here, we note that Sarah admitted that she (1) used narcotics since she was nine years old; (2) sold cocaine since she was sixteen; (3) continued to use and sell narcotics after K.M. was born; (4) sold narcotics to an undercover officer in her car, at midnight, while K.M. was in the back seat; and (5) intended to continue living with Keith despite his criminal history, history of drug abuse, and history of violence and endangerment of K.M. There was further testimony that Sarah had relapsed to drug abuse after becoming sober in the past and that she abducted her third child from his foster home before abandoning him behind a dumpster.

Similarly, the trial court heard considerable testimony concerning whether termination of Keith's parental rights was in K.M.'s best interest. In his testimony, Keith admitted that he (1) began using narcotics when he was thirteen years old; (2) had been convicted of at least twelve offenses in his life; (3) had his parental rights to one of his other children terminated while he was incarcerated; (4) was arrested for driving under the influence while K.M. was in the car; (5) knew that Sarah was selling drugs and had drugs in her possession while he, Sarah, and K.M. were driving

11

around at midnight; and (6) had completed intensive drug rehabilitation programs in the past, only to relapse into drug addiction. Furthermore, K.M.'s foster father testified that Keith did not show remorse for his past mistakes and that Keith had never been able to maintain steady employment or stable living arrangements.

The trial court could reasonably have found that these past acts and omissions by both parents were inexcusable and indicated that Sarah's and Keith's relationships with K.M. were not stable or safe. *See Holley*, 544 S.W.2d at 372; *Smith v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.). Furthermore, the court could reasonably have inferred that Sarah's and Keith's intentions to remain together after each of them had seriously jeopardized K.M.'s safety in the past indicated that neither parent would be able protect K.M. from emotional and physical danger in the future. *See In re C.H.*, 89 S.W.3d at 28 (noting that past endangerment may be probative of child's best interests now and in future); *Holley*, 544 S.W.2d at 371–72 (noting that courts may consider evidence relating to current and future emotional and physical needs of child). Finally, although K.M. was less than three years old at the time of these proceedings and could not adequately voice his preferences, the Department introduced evidence that he had bonded to his foster parents, that he referred to them as mom and dad, and that he considered their home to be his home. Thus, the trial court could have reasonably concluded that K.M. had some preference to remain with his foster parents. *See In re J.L.C.*, 194 S.W.3d 667, 675 (Tex. App.—Fort Worth 2006, no pet.) (noting that toddler's affection and attachment to foster parents can be evidence of child's desire to remain with foster family).

12

Considering this evidence in the light most favorable to the trial court's finding, we conclude that a factfinder could reasonably have formed a firm belief that termination of Sarah's and Keith's parental rights was in K.M.'s best interest. Therefore, we hold that the evidence is legally sufficient to support the trial court's finding that appellants' parental rights should be terminated. Similarly, in considering the evidence in a neutral light, we determine that a factfinder could reasonably have formed a firm belief or conviction that termination of Sarah's and Keith's parental rights was in K.M.'s best interest. Therefore, we hold that the evidence is also factually sufficient to support the trial court's finding that termination was in K.M.'s best interest. Having already concluded that there is legally and factually sufficient evidence to support the finding that a statutory ground for termination exists, we overrule Sarah's and Keith's first issue on appeal.

**Failure to appoint counsel**

In his second issue on appeal, Keith asserts that the trial court abused its discretion in failing to provide him with counsel for the termination proceedings. Specifically, Keith argues that because he was indigent and opposed the Department's petition to terminate his parental rights, the trial court was required to provide him with counsel. *See* Tex. Fam. Code Ann. § 107.013(a)(1) (West Supp. 2012). Keith claims that because the trial court had discretion to appoint counsel to him at the final hearing, the trial court abused its discretion in failing to do so.

Section 107.013(a) of the family code states that "[i]n a suit filed by a governmental entity in which termination of the parent-child relationship is requested, the court *shall* appoint an attorney ad litem to represent the interest of: (1) an indigent parent of the child who responds in opposition of the termination . . . ." *See id.* (emphasis added). This section provides indigent parents

with a statutory right to be represented by court-appointed counsel in parental-termination suits initiated by the Department. However, in order to be entitled to court-appointed counsel, a "parent who claims indigence under Subsection (a) must file an affidavit of indigence in accordance with Rule 145(b) of the Texas Rules of Civil Procedure before the court can conduct a hearing to determine the parent's indigence under this section." *Id.* § 107.013(d) (West Supp. 2012). As one court explained, a parent's filing of an affidavit of indigency is "the act which would trigger the process for mandatory appointment of an attorney ad litem . . . ." *In re K.L.L.H*, No. 06-09-00067-CV, 2010 WL 87043, at *5 (Tex. App.—Texarkana Jan. 12, 2010, pet. denied) (mem. op.).

In this case, Keith never filed an affidavit of indigency prior to the final hearing or at the final hearing itself. Counsel for the Department stated that she and K.M.'s attorney ad litem advised Keith months before the final hearing that he needed to contact the court to request appointed counsel. Furthermore, Keith was advised that he could request counsel at a status hearing, which was scheduled and occurred several weeks prior to trial, but Keith failed to attend that hearing. Keith admitted that he was advised that he needed to contact the court to request counsel, but he claims he did not know where the court was or what he would say to request counsel. However, Keith's lack of initiative does not alter the statutory requirement that he file an affidavit of indigency to "trigger" the process by which he could obtain counsel. *See* Tex. Fam. Code Ann. § 107.013(d).

Absent an affidavit of indigency, the trial court was under no obligation to conduct a hearing to determine whether Keith was indigent. *See In re K.L.L.H*, 2010 WL 87043, at *5 (noting that trial court's appointment of counsel when parent did not file indigency affidavit "can be described as generous"). Because Keith failed to trigger the process by which he could receive

14

court-appointed counsel, we cannot conclude that the trial court abused its discretion in failing to provide him with counsel. *See id.* We overrule Keith's second issue on appeal.

## CONCLUSION

Having overruled their two issues on appeal, we affirm the trial court's orders terminating Sarah's and Keith's parental rights.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed: February 26, 2013