

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00391-CV

———————————————

IN THE INTEREST OF A.M., L.M., K.M., AND L.M-L., CHILDREN

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-515226-12

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

The trial court signed a final order appointing the Department of Family and Protective Services as permanent managing conservator of T.M.'s four children—A.M. (Anne), L.M. (Lance), K.M. (Kyle), and L.M-L. (Luke)[1]—and designating T.M. (Mother) as her sons' possessory conservator. On the Department's modification motion, the trial court removed Mother as the children's possessory conservator.[2] Mother appeals from that order, arguing in one issue that the trial court abused its discretion by failing to bifurcate the attorney ad litem and guardian ad litem roles after JaNeen Hopkins—the children's attorney and guardian ad litem—allegedly developed a conflict of interest during the modification proceedings. We will affirm.

### I. Background

On March 6, 2020, the Department sued for conservatorship of the children and to terminate Mother's parent–child relationship with them.[3] That same day, the trial court signed an order for protection appointing the Department as the children's temporary sole managing conservator and appointing Hopkins as the children's attorney ad litem and guardian ad litem.

---

[1]We use aliases to identify the parties. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[2]The final order named Mother as the three boys' possessory conservator but did not name a possessory conservator for Anne. The modification order, however, removed Mother as all four children's possessory conservator.

[3]The children's father is deceased.

On June 6, 2022, the trial court signed a final order based on a mediated settlement agreement (MSA) that the parties had signed after mediating the case in late May 2022.[4] In its final order, the trial court appointed the Department as the children's permanent managing conservator and Mother as the possessory conservator of Lance, Kyle, and Luke. The trial court ordered that, subject to certain conditions, Lance would return to Mother's home that same day, Kyle on June 27, 2022, and Luke on July 18, 2022,[5] and ordered that Anne and Mother could mutually agree on visitation dates and times.[6] The trial court further ordered that Hopkins would remain appointed as the children's attorney and guardian ad litem.

---

[4]On January 13, 2021, the trial court timely signed an order retaining the case on its docket, extending the case's dismissal date to September 3, 2021, and setting the case for trial on May 5, 2021. *See* Tex. Fam. Code Ann. § 263.401(a), (b). On September 2, 2021, the trial court signed an order retaining the case on its docket until February 1, 2022, pursuant to the Texas Supreme Court's Fortieth Emergency Order Regarding the COVD-19 State of Disaster, which provided that "for any [parental-rights termination] proceeding that, on May 26, 2021, had been previously retained on the court's docket pursuant only to [Family Code] Section 263.401(b) or (b-1), the court may extend the dismissal date for a stated period ending no later than February 1, 2022." *See Fortieth Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 21-9079, ¶4.b (Tex. July 19, 2021). The trial court thus extended the dismissal date to February 1, 2022, and set the case for trial on December 10, 2021. *See id.* The trial commenced on December 10, 2021, and continued on January 21, 2022, and June 6, 2022.

[5]At the time of the final order, then-13-year-old Lance and then-11-year-old Kyle were in residential treatment facilities and then-nine-year-old Luke was living with a foster placement.

[6]Then-15-year-old Anne was living in a foster home.

Lance returned to Mother's home on June 6, 2022, the final order's signing date. About a week later, the Department received a report that Mother had pointed a loaded gun at her 17-year-old son George[7] and that George had then pointed the loaded gun at Lance. This prompted the Department to file a petition to modify the final order on June 16, 2022. The Department asked the trial court to remove Mother as the children's possessory conservator based on a material and substantial change in the children's circumstances. The trial court immediately signed a temporary ex parte order removing Mother as possessory conservator, and Lance was removed from her care. Soon thereafter, the Department moved for a new trial in the original conservatorship proceeding based on newly discovered evidence, arguing that had it been aware of that evidence, it would not have entered into the MSA.

On July 11, 2022, the trial court held an evidentiary hearing on the Department's new-trial motion and its modification request. During the hearing, Hopkins stated that Lance did not want to "stay with" Mother "at the moment." The trial court then adjourned the hearing to interview Anne, Lance, and George in chambers. Anne told the trial judge during her interview that only Lance wanted to return home to Mother, and Hopkins verified, "[Lance] is the only one that wants to go home." Lance confirmed during his interview that he wanted to return to Mother.

---

[7]George had intervened in the case in August 2021, but the trial court dismissed his intervention on his motion before signing the final order.

4

The trial court then resumed the hearing. At the hearing's conclusion, the trial court deferred ruling on the new trial and ordered that until then, the final order remained in place. But the trial court did not rule on the modification petition. The Department immediately returned Lance to Mother and returned Kyle and Luke to her a week later.

On August 31, 2022, the Department again moved to modify possessory conservatorship, asking the trial court to remove Mother as possessory conservator based on additional safety concerns in Mother's home since the gun-pointing incident and on Mother's unwillingness to cooperate with the Department. That same day, the trial court signed a new temporary order removing Mother as possessory conservator pending a hearing on the modification motion, which the trial court set for September 16, 2022. The boys were immediately removed from Mother's care.

On September 12, 2022, Mother moved to appoint a new guardian ad litem for the children. Mother asserted that "[t]he objectives expressed by the children during in-chambers interviews with the [c]ourt are in direct conflict with the best interest position presented by [Hopkins] in open court." Based on these alleged opposing positions, Mother argued that a conflict existed between representing the children's desires and representing the children's best interest and that Hopkins was thus "unable to continue to serve ethically in the dual [attorney and guardian ad litem] role." Mother asked the trial court to bifurcate the roles and to appoint a volunteer

5

advocate, a professional, or competent adult as the children's guardian ad litem while keeping Hopkins as the children's attorney ad litem.[8]

On September 16, 2022, the trial court held an evidentiary hearing on the Department's modification motion.[9] The trial court found that there had been a material and substantial change in the children's circumstances and that Mother's continued appointment as the children's possessory conservator was not in their best interest. The trial court signed an order granting the Department's motion, removing Mother as the children's possessory conservator, and ordering that Mother have reasonable visitation and access to the children, "as agreed upon and arranged, and supervised by the Managing Conservator, or its designee." Mother timely appealed from that order on October 6, 2022.[10]

## II. Discussion

Mother's only issue challenges the trial court's failure to bifurcate the attorney ad litem and guardian ad litem roles and to appoint a separate guardian ad litem for the children after Hopkins allegedly developed a conflict of interest in July 2022.

---

[8]Although the certificate of conference on Mother's motion expressly stated that the Department and Hopkins were unopposed "to the motion," Hopkins filed a response opposing Mother's request to bifurcate the ad litem roles.

[9]With the parties' agreement, the trial court took judicial notice of the evidence presented at the July 11 hearing.

[10]A few days earlier, the trial court had signed an order denying the Department's new-trial motion in the original conservatorship proceeding.

According to Mother, Hopkins misled the trial court during the July 11, 2022 hearing by stating that Lance did not want to stay with Mother because, later that day, Lance told the trial judge in chambers that he wanted to live with his Mother. Mother claims that, at this point, Hopkins "should have immediately acknowledged her conflict of interest," corrected her earlier statement, and advised the trial court "of her surprise at [Lance's] position . . . and immediately ask[ed] for a guardian ad litem to be appointed."

But Hopkins did none of those things, and the evidentiary hearing resumed after the in-chambers interviews were completed. Two months later, Mother moved for the appointment of a new guardian ad litem. Four days after that, the trial court held an evidentiary hearing on the Department's modification motion and removed Mother as possessory conservator. According to Mother, Hopkins's conflict compromised Hopkins's ability to properly represent the children and left them—especially Lance—without adequate representation during that time.

Mother, however, lacks standing to challenge the trial court's failure to appoint a separate guardian ad litem to represent the children. A party may not complain of errors that do not injuriously affect her or which affect only the rights of others. *In re S.I.-M.G.*, No. 02-12-00141-CV, 2012 WL 5512372, at *14 (Tex. App.—Fort Worth Nov. 15, 2012, no pet.) (mem. op.); *In re T.N.*, 142 S.W.3d 522, 524 (Tex. App.—Fort Worth 2004, no pet.). An exception exists when the appellant is deemed to be a party under the doctrine of virtual representation, which requires in this case—among other

elements—that Mother and the children have identical interests. *See S.I.-M.G.*, 2012 WL 5512372, at *14; *T.N.*, 142 S.W.3d at 524.

Here, Mother does not assert that she and the children have identical interests. Although the record indicates that Lance wanted to be reunified with Mother and that Mother presumably wanted the children returned to her, a mutual desire for reunification is insufficient to show that Mother and the children have identical interests. *See, e.g., In re B.M.*, No. 13-17-00467-CV, 2017 WL 5953098, at *9 (Tex. App.—Corpus Christi–Edinburg Nov. 30, 2017, pet. denied) (mem. op.); *In re G.F.*, No. 09-11-00316-CV, 2012 WL 112549, at *1 (Tex. App.—Beaumont Jan. 12, 2012, no pet.) (mem. op.). The children's interest was to find a safe, loving, and permanent living situation to live in and to have frequent, continuing contact with a parent who has shown the ability to act in their best interest. *See* Tex. Fam. Code Ann. § 153.001(a)(1)–(2); *B.M.*, 2017 WL 5953098, at *9; *In re J.E.G.*, No. 06-17-00064-CV, 2017 WL 4448547, at *5 (Tex. App.—Texarkana Oct. 6, 2017, pet. denied) (mem. op.). The evidence, however, proved that Mother could not provide that, despite her desire for reunification. Because Mother's and the children's interests were not aligned, Mother lacks standing on appeal to challenge the trial court's failure to bifurcate Hopkins's roles and to appoint a separate guardian ad litem to represent the children.[11] *See G.F.*, 2012 WL 112549, at *1 (holding that mother lacked standing in

---

[11]Moreover, at the time Hopkins's alleged conflict arose, the Department was the children's managing conservator. As managing conservator, the Department has

parental-rights-termination case to complain that children's attorney ad litem provided ineffective assistance by improperly taking on dual role as both attorney and guardian ad litem or to complain about "an alleged conflict of interest or deficient performance on the part of the ad litem").

Even if Mother had standing to lodge this complaint (and assuming that she preserved it for our review), she cannot show harm.[12] To obtain reversal of a judgment based on an error in the trial court, the appellant must show not only that the error occurred but also that it probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting the case to this court. Tex. R. App. P. 44.1(a); *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 225 (Tex. 2005). Mother does not argue that the trial court's failure to appoint a separate guardian ad litem to represent the children harmed or injured her; she asserts only harm to the children, which, as we explained above, she lacks standing to do.[13]

We overrule Mother's issue.

---

"the right to represent the child in legal action[s] and to make other decisions of substantial legal significance concerning the child." Tex. Fam. Code Ann. § 153.371(8). Mother did not have that right then nor does she now on appeal.

[12]We are equally unpersuaded that Mother could show error. That Hopkins told the trial court at the new-trial hearing that Lance did not want to go back to Mother "at that moment" but told the trial court later that same day that Lance wanted to live with Mother does not—without more—show that she could not ethically represent his best interest.

[13]As we have pointed out in similar cases, "Mother [appears to be] seek[ing] to exploit the alleged deficiencies of the child's counsel for her own use on appeal." *S.I.-M.G.*, 2012 WL 5512372, at *14; *T.N.*, 142 S.W.3d at 524.

### III. Conclusion

Having overruled Mother's only issue, we affirm the trial court's order.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: February 9, 2023