In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00287-CV
_____

**MATTHEW MONROE MILLER, Appellant**

**V.**

**JENNY MILLER, Appellee**

On Appeal from the 1A District Court
Tyler County, Texas
Trial Cause No. 25,129

**MEMORANDUM OPINION**

This is an appeal from a final decree of divorce in which appellant Matthew Monroe Miller challenges the trial court's decision appointing appellee Jenny Miller as the managing conservator with the exclusive right to designate the primary residence of their child. Matthew also complains he was denied effective assistance of counsel during trial. As set forth below, we affirm the trial court's judgment.

1

## BACKGROUND

Matthew and Jenny were married in July 2018. Jenny sued Matthew for divorce in July 2019. In her petition, Jenny alleged she and Matthew had one child during their marriage, and Jenny requested that the trial court designate her as the conservator who has the exclusive right to designate the primary residence of their son, Andy.[1] When Matthew answered Jenny's suit, he counterclaimed for divorce and asked the trial court to appoint him and Jenny as joint managing conservators and to restrict the primary residence of Andy to Tyler County, Texas and contiguous counties with Tyler County. The parties entered into a Rule 11 Agreement for Temporary Orders in which both parties were named temporary joint managing conservators, and Jenny was granted the exclusive right to designate Andy's primary residence in Tyler County, Texas.

In April 2020, Matthew filed a First Amended Petition to Modify Temporary Orders requesting that the trial court appoint him as the person who has the right to designate the primary residence of Andy. Matthew attached his Affidavit in which he explained that prior to the divorce Andy enjoyed living next door to Matthew's parents who have been a big part of Andy's life. Matthew stated that Andy also

---

[1]To protect the minor's privacy, we will refer to him by a pseudonym. *See* Tex. R. App. P. 9.9(a)(3).

2

enjoyed baseball and martial arts and spending time with Matthew's other son from a prior marriage. Matthew explained that Jenny removed Andy from karate and baseball, secluded him from his normal routine and family, forced Andy to go to Mississippi and New Orleans when he was not in school, and refused to work and help support Andy. Matthew stated that he wanted to be Andy's primary conservator because he was concerned about Jenny's depression and Andy's physical and mental safety, and he did not think it was good to move Andy away from his home, friends, and family who offered support and stability.

In August 2020, the trial court appointed an attorney ad litem for Andy. In September 2020, the trial court entered Second Amended Temporary Orders granting Jenny the exclusive right to designate the primary residence of Andy within Tyler County, Texas or Jackson County, Mississippi. In December 2020, the parties tried the contested issues to the bench. The attorney ad litem advised the court that Andy was eight years old and wanted to live in Texas, and he wanted his parents to get back together and quit fighting or live in the same school district so he could split his time between them. The attorney ad litem explained that her job was to determine what the child wanted and not to offer an opinion on the child's best interest.

Jenny testified that she and Andy, who is eight years old, live in Biloxi, Mississippi with her mother and sister, but she plans to get her own place. Jenny

3

works as an intake nurse at the jail and has a flexible schedule and medical insurance for Andy, and her mother picks Andy up from school. Jenny explained she and Matthew went to high school together in Mississippi and had been in a relationship for approximately nine years when they had Andy. Jenny testified that she was living in Mississippi when she got pregnant, and she moved to Texas with Matthew during the pregnancy, but Matthew did not marry her until 2018 when Andy was six years old. Jenny testified that while they were in Texas, Matthew worked away from home for months at a time, and she was Andy's primary caregiver and had no family or friends in Texas.

Jenny explained that she started nursing school and had an accident and postpartum depression, and Matthew became more controlling and alienated her from her family. Jenny further explained they tried marriage counseling and she sought treatment for her depression, but they were not happy, and she found out Matthew had a girlfriend. Jenny testified she was uncomfortable living in Texas on Matthew's parents' property. At Matthew's request, Jenny took a psychological evaluation which indicated she had major depressive disorder recurrent with anxious distress and concluded that she was not incapacitated in any way, and Jenny testified she has taken an antidepressant for years. Jenny also testified that there is a history

4

of suicide in her family, but she had never thought of hurting herself when she was depressed.

Jenny testified Andy was smart, witty, and loved to build stuff, ride his bike, climb trees, and play baseball. Jenny also explained that she let Andy take a break from martial arts because it seemed like he was not enjoying it, but she testified that they have been discussing what extracurricular activities Andy wants to do. Jenny explained Andy was tenderhearted and loved both his parents, but Andy had been stressed by the divorce and by Matthew trying to convince him Mississippi was terrible. Jenny believed Matthew tried to undermine her relationship with Andy. Jenny testified that it was in Andy's best interest that she be named the primary conservator and be allowed to live in Mississippi and for Matthew to have Andy two weekends per month. Jenny explained that being in Mississippi allows her to be closer to her family, and she is happier and free from Matthew's harassment, and the custody evaluation conducted by Kristi Clark documented that Matthew acted inappropriately and made threatening and negative comments towards Jenny in front of Andy. Jenny also testified she planned to facilitate visitation and did not restrict Andy from calling Matthew.

Matthew testified that he moved from Mississippi to Texas when his parents bought land in Woodville. Matthew had one sister in Mississippi, but he had no

intention of moving back. Matthew apologized for his bad behavior towards Jenny and he stated he had taken co-parenting and anger management classes. Matthew explained that prior to the divorce, he spent approximately six months of the year at home with Jenny and Andy, and when he was home, he took care of the house and was Andy's primary caretaker while Jenny worked. Matthew also explained that his mother helped take care of Andy while he was away at work. Matthew testified that Jenny quit work shortly after they married in 2018 to study to become a registered nurse. Matthew explained that he and Jenny increasingly fought after they married and bought a home they could not afford, and Jenny negligently spent money they did not have and deposited money into a secret account. Matthew testified he lost his job, had been fighting for unemployment, intended to catch up on child support payments, and was trying to find steady employment.

Matthew explained that Andy had a strong bond with his grandparents that had been restricted by the divorce. According to Matthew, before moving to Mississippi, Andy did well in school in Woodville and participated in extracurricular activities, but he had excused and unexcused absences while attending school in Mississippi. Matthew testified that Andy had a better life in Texas, and it was in Andy's best interest to be in Texas and spend more time with Matthew and have the family support system to which he was accustomed. Matthew was concerned about

Andy's mental stability and anxiety, Jenny's mental instability and failure to seek professional help, and her alienation tactics and ability to provide for Andy. Matthew agreed that he played a part in Jenny's depression, but he denied having an affair. Matthew disagreed with Clark's opinion that Jenny was in a better position to meet Andy's needs.

Barbara Williams, Jenny's mother, testified that Andy was happy in Mississippi, and Jenny was happier having her family's support. Laura Herrin testified she has known Jenny and Matthew for over twenty years and had witnessed Matthew talking negatively about Jenny in front of Andy. Amanda Kelley, a childhood friend of Jenny and Matthew, testified that based on her observations while visiting in Texas, Jenny was Andy's primary caregiver and Matthew was not supportive of Jenny. Kelley testified that Jenny is doing better in Mississippi and Andy seems to be enjoying himself. Jessica Medina, the mother of Matthew's older son, testified that she and Matthew co-parent well and their son is healthy because of their relationship. Nancy Miller, Matthew's mother, testified that she and her husband spent an extraordinary amount of time with Andy when he lived next door to them in Texas, and Andy wished he lived in Texas. Miller believed it was in Andy's best interest to be in Texas.

In the Final Decree of Divorce, the trial court appointed Jenny and Matthew as Andy's joint managing conservators and ordered that Jenny shall have the exclusive right to designate Andy's primary residence without regard to geographic restriction.

ANALYSIS

In issue one, Matthew contends the evidence fails to support the trial court's decision to appoint Jenny as the managing conservator with the exclusive right to designate the primary residence of Andy.

We review complaints about a trial court's conservatorship order in an appeal for abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Under an abuse-of-discretion standard, legal and factual insufficiency claims in family law cases are not analyzed as independent grounds of error. *Id.* Instead, how well the evidence in the proceedings supports the trial court's resolution of custody issues is but one of the factors relevant to an appellate court's review of a claim alleging the trial court's rulings constitute an abuse of discretion. *Id.*; *see also In re S.T.*, 508 S.W.3d 482, 489 (Tex. App.—Fort Worth 2015, no pet.).

When reviewing challenges to the decision trial courts make in bench trials, appellate courts do not have the benefit of observing the witnesses testify. Consequently, trial courts are "'in the best situation to observe the demeanor and personalities of the witnesses and can feel the forces, powers, and influences that cannot be discerned by merely reading the record.'" *In re N.A.S.*, 100 S.W.3d 670, 673 (Tex. App.—Dallas 2003, no pet.) (quoting *In re T.*, 715 S.W.2d 416, 418 (Tex. App.—Dallas 1986, no writ)). When the trial court acts as the factfinder in the trial, it determines the weight to give any testimony and resolves any conflicts in the testimony that came into evidence during trial. *Chavez v. Chavez*, 148 S.W.3d 449, 457 (Tex. App.—El Paso 2004, no pet.).

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann. § 153.002; *see also In re J.A.H.*, 311 S.W.3d 536, 541 (Tex. App.—El Paso 2009, no pet.). In reviewing challenges made in appeals that seek to overturn a trial court's best interest finding, we consider public policy, as expressed in the Texas Family Code. *See Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). As to those policies, section 153.001 of the Family Code states:

> [t]he public policy of this state is to: (1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child; (2) provide a safe, stable, and nonviolent environment for the child; and (3) encourage parents to

share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

Tex. Fam. Code Ann. § 153.001(a).

With respect to determining the best interests of a child, the Texas Supreme Court has set forth a non-exhaustive list of several factors that courts may consider: (1) the desires of the children; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent which may indicate the existing parent-child relationship is not proper; and (9) any excuse for the acts or omission of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). These considerations do not, however, prevent a trial court from allowing a parent, with the trial court's permission, to relocate the children of the marriage to another state. *Lenz*, 79 S.W.3d at 14 (noting the Family Code has "no specific statute governing residency restrictions or their removal for purposes of relocation"). The trial court's decision to extend permission must nonetheless be in the child's best interest, providing the children "a safe, stable, and nonviolent environment" where they will be raised. *Id.* at 16 (citing Tex. Fam. Code Ann. § 153.001(a)).

The evidence admitted during the trial addressed the conditions Andy was living in when Jenny and Matthew were living together as one family in Texas and the conditions Jenny and Andy lived in after moving to Mississippi to be closer to her family. The testimony also addressed Matthew's and Jenny's respective capabilities and resources to provide for and care for Andy, and the dynamics of their relationship and ability to co-parent. The evidence allowed the trial court to conclude the home Jenny made in Mississippi is safe and stable and that both Andy and Jenny were happy and doing well in Mississippi. The trial court had evidence before it of Jenny's Court Ordered Psychological Evaluation conducted by Eryn M. Lucas, a licensed psychologist, who concluded Jenny was not psychologically incapacitated and was compliant with an effective treatment program; the attorney ad litem's statement that Andy wanted to live in Texas; and the Child Custody Evaluation in which Clark determined that Jenny was better able to meet Andy's needs and recommended that Jenny continue to have the right to determine Andy's primary residence, because Andy's sense of permanency or home is with Jenny and Andy wanted to live with Jenny in Mississippi. As the factfinder, the trial court was the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *See Chavez*, 148 S.W.3d at 457. We conclude that Matthew has failed to show the trial court abused its discretion by appointing Jenny as the

managing conservator with the exclusive right to designate Andy's primary residence. *See In re J.A.J.*, 243 S.W.3d at 616. We overrule issue one.

In issue two, Matthew complains he was denied effective assistance of counsel because his counsel failed to: (1) object at the end of the trial about the absence of a reporter's record for the trial court's ruling; (2) object at the Motion for Entry of the Final Decree of Divorce; and (3) object when the trial court allowed the attorney ad litem to be absent during trial to appear at another proceeding. Matthew does not cite to any authority showing that the right to effective assistance of counsel extends to cases that only resolve conservatorship issues. While the Texas Supreme Court has held there is a statutory right to effective assistance of counsel for indigent persons in parental rights termination cases, there is no constitutional or statutory provision granting that right in cases resolving the managing conservatorship of a child, and we decline to extend a right to effective assistance of counsel to the conservatorship dispute in this case. *See In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *In re A.B.*, 548 S.W.3d 81, 84 (Tex. App.—Beaumont 2018, no pet.); *In re G.J.P.*, 314 S.W.3d 217, 221–24 (Tex. App.—Texarkana 2010, pet. denied). Further, the record before us is insufficient to show that counsel's performance was ineffective.

Matthew also complains Andy was denied effective assistance of counsel because the trial court allowed the attorney ad litem to be absent during trial to appear at another proceeding. The record shows that the parties agreed to excuse the attorney ad litem and that the attorney ad litem's alleged ineffectiveness was not formally challenged in the trial court, either during the trial or in a motion for new trial hearing. Jenny argues that Matthew lacks standing to complain about Andy's attorney ad litem's performance.

First Mathew has no right to complain about his appointed-counsel's effectiveness, as we have pointed out. And even if he did, a party may not complain of errors that do not injuriously affect them or which only affect the rights of others. *In re T.N. & M.N.*, 142 S.W.3d 522, 524 (Tex. App.—Fort Worth 2004, no pet.). An exception exists for the doctrine of virtual representation, which requires, among other things, that the appellant and the child have identical interests. *Id.* The record does not indicate that Andy and Matthew have identical interests. Matthew does not have standing on appeal to complain on Andy's behalf about the performance of Andy's attorney ad litem. *See id.*; *In re G.F.*, No. 09-11-00316-CV, 2012 WL112549, at *1 (Tex. App.—Beaumont Jan. 12, 2012, no pet.) (mem. op.). Matthew also lacks standing to complain on his own behalf concerning the attorney at litem. *See In re T.N. & M.N.*, 142 S.W.3d at 524; *In re G.F.*, 2012 WL112549, at

13

*1; *see also A.E. v. Tex. Dep't of Family & Protective Servs.*, No. 03-14-00414-CV, 2014 WL 7458731, at *5 (Tex. App.—Austin Dec. 23, 2014, no pet.) (mem. op.) (concluding father lacked standing to complain about trial court's determination to proceed without children's ad litem attorney present). Accordingly, we overrule issue two. Having overruled both of Matthew's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on December 6, 2022
Opinion Delivered February 16, 2023

Before Golemon, C.J., Horton and Johnson, JJ.

14