# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00414-CV

A. E. and J. L., Appellants

v.

Texas Department of Family and Protective Services, Appellee

FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT
NO. C2012-1407C, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A.E. ("Alice") and J.L. ("John") appeal from the trial court's judgment terminating their parental rights to their two minor children, "Maria" and "Jessica."[1]  On appeal, John asserts that (1) the trial court erred in proceeding with the termination hearing before appellee, the Texas Department of Family and Protective Services (the Department), responded to all requests for discovery; (2) the trial court erred in proceeding with the termination hearing when Maria and Jessica's attorney ad litem was not present; and (3) the evidence is insufficient to terminate John's parental rights.  In her sole issue on appeal, Alice asserts that the evidence is insufficient to terminate her parental rights.  We affirm the trial court's judgment terminating Alice's and John's parental rights.

---

[1]  For the sake of convenience and privacy of the parties, we refer to the children, their parents, and other family members by fictitious names.  *See* Tex. Fam. Code § 109.002(d).

## BACKGROUND

The Department became involved in this case after receiving a report that John allegedly exposed his genitals to Maria.[2] According to Alice's mother, "Carmen," she and Maria—who was five years old at the time—were alone in Carmen's home when Maria stated, "I saw my daddy's hotdog." Carmen would later testify that she replied "You what?," to which Maria replied "I saw my daddy's hotdog. He was putting on his panties and he had a hole in his panties and his hotdog fell out." Carmen asked Maria if John covered himself, and Maria replied, "No. He just left it there." Carmen told Maria not to "tell stories," but Maria maintained that she was telling the truth and stated, "That happened; it really did."

Carmen testified that she immediately told Alice what Maria said about John's indecent exposure. Alice called the local sheriff's office to report the allegation. The sheriff's office contacted the Department to inform them of the allegation and forwarded Alice's affidavit about Maria's outcry statements. Destiny Winters, the Department's caseworker initially assigned to this case, testified that she spoke with Alice and John separately about Maria's outcry. John denied Maria's allegation, but divulged that he had been smoking marijuana and taking prescription opiates. Alice told Winters that John was physically and verbally abusive toward her in the past, including instances of physical violence in front of the children. According to Winters, based on John's alleged indecent exposure to Maria, drug use, and domestic violence, the Department opened a "Family Based Safety Service" case under which Alice and John agreed to voluntarily participate in various services.

---

[2] As discussed below, this was only the first in a series of outcry statements made by Maria and Jessica and was not the basis for terminating John's parental rights.

2

At the same time that the Department began its safety service case, John was under a temporary court order—entered as part of Alice's and John's ongoing divorce proceedings—not to make contact with his children until he had completed a sexual deviancy assessment and a drug and alcohol assessment. Despite this order, Alice admitted to Winters that she allowed John to be around their children, once on Maria's birthday and at least two other times when Alice went to John's house to collect child support. Winters testified that based on Alice's willingness to violate the court order and to allow John to have contact with their children, the Department sought to remove the children from Alice's care.

Following an adversarial hearing, the trial court signed an order naming the Department as the children's temporary managing conservator. Dwayne De La Pena, the Department's caseworker who assumed responsibility for this case after the children were removed, testified that the Department prepared family service plans through which Alice and John could work toward regaining custody of their children. *See* Tex. Fam. Code § 263.106. De La Pena testified that Alice completed certain services—including individual therapy and anger management courses—but failed to fully participate in these programs or address the Department's primary concerns "such as the parenting skills and not acknowledging the past sexual abuse" of her children. Similarly, De La Pena testified that John was initially unwilling to participate in the anger management, individual therapy, and sexual deviancy programs required by his family service plan, although he did ultimately participate in and complete his individual therapy.

Tara Garza, a licensed counselor specializing in children and family counseling, met with Maria and Jessica on a bi-monthly basis after the children were removed from Alice's

and John's care. When these sessions began, Maria was six years old and Jessica was four. Garza testified that by the ninth session, Maria began drawing "private parts," and when she asked Maria about the drawing, Maria explained that "she learned about privates from her dad." In the following session, Maria again drew private parts and told Garza that "her dad would touch her in her private parts with his hand." Maria also told Garza that John would make Maria and Jessica touch each other's private parts. Garza testified that during subsequent sessions, Maria exhibited "sexual play" with puppets during which she acted out various sexual behaviors, reported another incident in which John put his "hotdog . . . on her butt," and stated that John watched pornographic movies during some of these incidences of sexual abuse. Jessica made similar, albeit less detailed, outcry statements about John's alleged abuse. Garza testified that based on the consistency of Maria's and Jessica's statements, their ability to distinguish the truth from a lie, and their exhibiting sexual behavior indicative of abuse,[3] Garza believed that Maria's and Jessica's outcry statements about John's abuse were true.

After his initial refusal to participate in counseling, John was referred to Dr. John Bruce, a licensed sex offender treatment provider. Bruce testified that John was very engaged and honest during their sessions. At the time he began counseling John, the only allegation of which Bruce was aware was Maria's initial outcry that she saw John's genitals. John told Bruce that he never knowingly exposed himself to his daughters and that if any exposure occurred it was

---

[3] Garza testified that Jessica told her that both she and Maria would frequently insert crayons or toys into her sexual organ during baths. Maria confirmed that this happened at least once, and Garza stated that such a lack of appropriate boundaries amongst children their age indicated that they had likely been exposed to sexual experiences beyond pornography.

unintentional. Bruce suggested that John take a polygraph exam so that Bruce could determine whether the allegations were true. John ultimately agreed to take the polygraph, and Bruce testified that the results indicated that John was telling the truth. However, Bruce conceded that the four-question polygraph only asked about the allegation in Maria's initial outcry—i.e., John's allegedly exposing himself—and did not ask any questions about Maria's or Jessica's other allegations of sexual abuse.

The Department ultimately sought to terminate John's and Alice's parental rights to their two children. Following a four-day hearing on the Department's petition to terminate John's and Alice's parental rights, the trial court found by clear and convincing evidence that a statutory ground for terminating their parental rights existed and that termination of the parents' rights was in the children's best interest. *See id.* § 161.001(1), (2). Therefore, the trial court entered a final judgment terminating John's and Alice's parental rights. This appeal followed.

## DISCUSSION

John raises three issues on appeal. First, John asserts that the trial court erred in proceeding with the final hearing on the Department's motion to terminate before the Department had disclosed its redacted file to the parents. Second, John asserts that the trial court erred in proceeding with the termination hearing when Maria and Jessica's attorney ad litem was not present. Finally, John asserts that the evidence is insufficient to terminate his parental rights. Similarly, Alice asserts that the evidence is insufficient to terminate her parental rights. We discuss these appellate issues separately.

5

**Proceeding with hearing before Department completed discovery**

In his first issue on appeal, John asserts that the trial court erred in proceeding with the termination hearing before the Department had complied with the requirements of the court's discovery control plan. Specifically, John notes that as part of its discovery control plan, the trial court ordered the Department to disclose its complete "de-identified file," which the court explained is the "complete case record with any confidential information redacted, and includes emails." *See id.* § 261.201(b) (noting that trial court may order disclosure of confidential information if certain conditions are met). John asserts that the Department failed to provide him with a complete de-identified file prior to the final hearing and, therefore, it was "both arbitrary and unreasonable for the trial [court] to begin termination proceedings against a parent whose counsel has not received all of the documents properly and timely requested by counsel pursuant to a properly entered Discovery Control Plan." In response, the Department asserts that this complaint has not been preserved for appellate review. We agree.

Prior to the Department's opening statement, the following exchange occurred between the trial court, counsel for the Department, John's trial counsel, and Alice's trial counsel:

COURT:      The next thing is I understand that the Department has or will have their deidentified file on a certain date.

DEPARTMENT:      April 8th [One week from the first day of the final hearing].

. . . .

COURT:      I am going to give [John's and Alice's counsel] the opportunity to make a decision about how we proceed today. What we are going to do is we are going to get started and I am going to let the Department put a witness on and we will hear at least one witness unless you all

6

want to proceed for the rest of the day, because you don't have the benefit of the deidentified file. . . . We are going to let you get it on the 8th and then have some time with it before we come back and proceed very far into the trial.

And I am doing that for the Respondents' benefit.

. . . .

Ms. Harting [John's trial counsel], I am going to give you the benefit of making the decision on whether you all want to go all day . . . .

JOHN:    I would actually prefer that this case be dismissed and I don't want to be put in a position of having to choose whether or not to proceed or whether or not [the Department] does one witness because I think that they both violate the intention of the Statute. I think that calling a witness for the sole purpose of stopping the time line is at your discretion and we are prepared to go on what we have available to us which is the records through November 18th if you decide to let us proceed.

COURT:    Okay. That's fine. Mr. Hajek [Alice's trial counsel]?

ALICE:    I also think it is somewhat disingenuous to start a trial just for the time limit, but I know it's [sic] happens. My client is present and says she wants to hear the evidence and we can get through today.

COURT:    We will do that then.

John asserts, and the record supports, that the trial court insisted on beginning the termination hearing because had the hearing been delayed any further, the court would have been required to dismiss the case because it had been pending for too long. *See id.* § 263.401(a) (requiring court to dismiss Department's suit to terminate parental rights if trial on merits does not commence within one year of Department being named temporary managing conservator), (b) (allowing for one-time 180-day extension of time to retain termination suit if trial court makes certain findings).

7

John's complaint on appeal is that the Department's failure to fully respond to discovery should have barred the trial court from proceeding with the final hearing. However, this argument was not raised at trial. As the above transcript demonstrates, John's sole complaint at trial was that allowing the Department to call a single witness in order to "commence[] the trial on the merits" was inconsistent with the purpose of section 263.401 of the Family Code. John did not contend that the Department's failure to provide its complete de-identified file should have precluded the court from proceeding with the termination hearing, and he has therefore waived that complaint on appeal.[4] *See* Tex. R. App. P. 33.1(a) (requiring party to raise complaint at trial in order to preserve issue for appeal).

Furthermore, even if John had preserved this complaint for appeal, we would still find that this argument lacks merit. John does not cite any authority to support his assertion that the proper remedy for any failure of the Department to fully respond to discovery is to prohibit the court from proceeding to trial. Generally, when a party fails to timely make, amend, or supplement a discovery response, the proper remedy is to prohibit the party from offering the undisclosed evidence at trial. *See Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 213–14 (Tex. App.—Austin 2013, no pet.) (citing Tex. R. Civ. P. 193.6). John does not provide any explanation as to why this remedy is inadequate or inappropriate in the parental-termination context. Furthermore, John never moved to exclude any evidence that the Department introduced on the basis that it was not timely disclosed. Most importantly, John does not explain how he was prejudiced by the Department's failure to timely supplement its discovery with portions of its de-identified file.

---

[4] Although John filed a motion to compel discovery ten days before trial, there is no indication in the record that the trial court ruled on the motion to compel or that the John objected to the trial court's failure to rule. *See* Tex. R. App. P. 33.1(a).

Therefore, we conclude that John's argument that the trial court erred in proceeding with the termination hearing before the Department had fully responded to discovery is without merit. We overrule John's first appellate issue.

**Proceeding with hearing without attorney ad litem**

In his second issue on appeal, John asserts that the trial court erred in proceeding with the termination hearing when Maria and Jessica's attorney ad litem was not present. Specifically, John notes that the children's attorney ad litem was not present at the beginning of the hearing and therefore did not have the opportunity to cross-examine the Department's first three witnesses. In response, the Department asserts that John does not have standing to complain about his children's lack of representation. We agree.

"A party may not complain of errors which do not injuriously affect her or which only affect the rights of others." *In re T.N.*, 142 S.W.3d 522, 524 (Tex. App.—Fort Worth 2004, no pet.) (internal citations omitted). Courts have interpreted this rule to mean that a parent in a parental-termination case does not have standing to complain about alleged deficiencies in his children's or spouse's representation. *See id.* (concluding that father lacked standing to complain about his children's counsel's allegedly deficient performance); *see also In re G.F.*, No. 09-11-00316-CV, 2012 WL 112549, at *1 (Tex. App.—Beaumont Jan. 12, 2012, no pet.) (mem. op.) (same); *S.M.M. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00585-CV, 2013 WL 812088, at *3 n.5 (Tex. App.—Austin Feb. 26, 2013, no pet.) (mem. op.) (noting that mother in parental-termination case lacked standing to complain about trial court's failure to appoint counsel to father). John fails to explain why he has standing to complain about his children's lack of representation or how he was

9

injured by the trial court's decision to proceed when their attorney ad litem was not present. Therefore, we conclude that John lacks standing to raise this complaint, and we overrule his second appellate issue. *See T.N.*, 142 S.W.3d at 524–25.

**Sufficiency of the evidence**

In his third and final appellate issue, John asserts that the evidence is legally and factually insufficient to terminate his parental rights. Similarly, in her sole issue on appeal, Alice asserts that the evidence is legally and factually insufficient to terminate her parental rights. To terminate the parent-child relationship, the fact-finder must find clear and convincing evidence that (1) the parent has engaged in conduct constituting statutory grounds for termination and (2) termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). John argues that the evidence is insufficient to establish either of these elements, while Alice asserts only that the evidence is insufficient to establish that terminating her parental rights was in her children's best interest. We will briefly discuss the applicable standard of review before addressing John's and Alice's arguments.

*Standard of review*

"The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In a termination case, we review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the trial court's determination and will uphold a finding if a reasonable fact-finder could have formed a firm conviction that its finding was true. *Id.* To give appropriate deference to

the trial court's conclusions, we must assume that the court resolved disputed facts in favor of its finding if it could reasonably do so. *Id.* An appellate court should disregard evidence a reasonable fact-finder could have disbelieved or found incredible. *Id.*

When reviewing the factual sufficiency of the evidence in a parental termination case, we view all of the evidence in a neutral light and determine whether a reasonable fact-finder could form a firm belief or conviction that a given finding was true. *C.H.*, 89 S.W.3d at 18–19. We assume that the trial court resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable fact-finder could have disbelieved or found incredible. *J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable fact-finder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the trial court could not reasonably have formed a firm belief or conviction that its finding was true. *Id.*

*Statutory ground for termination*

At trial, the Department asserted that subsections (E) and (O) supported terminating John's parental rights. *See* Tex. Fam. Code § 161.001(1)(E), (O). Subsection (E) requires the trial court to find by clear and convincing evidence that John "engaged in conduct . . . which endangers the physical or emotional well-being of" his children. *See id.* § 161.001(1)(E). By contrast, subsection (O) requires the court to find that John (1) was ordered to comply with a family service plan as a result of his children's removal for abuse or neglect and (2) failed to comply with the requirements of the family service plan. *See id.* § 161.001(1)(O); *see also In re E.C.R.*, 402 S.W.3d 239, 246 (Tex. 2013) (discussing necessary elements of subsection (O)).

11

Only one statutory ground is necessary to support a judgment in a parental-rights-termination case. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, when multiple statutory grounds for termination are alleged, we must uphold the trial court's judgment terminating a parent's rights if any of the statutory grounds alleged supports it. *Spurck*, 396 S.W.3d at 221 (citing *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied) (per curiam)). First, we will consider whether the evidence is sufficient to support the trial court's finding that John engaged in conduct that endangered Maria's and Jessica's physical and emotional well being. *See* Tex. Fam. Code § 161.001(1)(E).

At trial, Garza testified extensively about her bi-monthly counseling sessions with Maria and Jessica. Garza stated that Maria and Jessica told her several times that John touched their private parts, made Maria and Jessica touch each other's private parts, and put his "hotdog" on Maria's buttocks. Furthermore, Garza stated that Maria told her that John would often watch pornographic material while engaging in this sexual conduct. Finally, Garza testified that based on the consistency of Maria's and Jessica's statements, their ability to distinguish the truth from a lie, and their exhibiting sexual behavior indicative of abuse, Garza believed that Maria's and Jessica's allegations about John's conduct were true.

"Sexual abuse is conduct that endangers a child's physical or emotional well being." *In re E.A.G.*, 373 S.W.3d 129, 143 (Tex. App.—San Antonio 2012, pet. denied) (internal citations omitted). Therefore, Garza's testimony alone is sufficient to support the trial court's conclusion that John engaged in conduct that endangered Maria's and Jessica's physical and emotional well being.

12

On appeal, John asserts that Bruce's testimony about his counseling sessions with John should have been given more weight than Garza's testimony.[5] Specifically, John notes that Bruce testified that John was open and honest during their counseling sessions and that John had passed a polygraph test regarding the alleged abuse. However, the polygraph results themselves were not admitted as evidence and were only used to explain why Bruce believed John was telling the truth during their sessions. Furthermore, Bruce admitted that the polygraph test only asked John about Maria's initial outcry—i.e., that John exposed himself—but did not ask any questions about the more extensive allegations of abuse made during Maria's and Jessica's counseling sessions with Garza. Finally, Bruce admitted that once John passed the polygraph exam, his counseling sessions no longer addressed John's alleged sexual abuse of his children. Given that the trial court found that John engaged in conduct that endangered Maria's and Jessica's physical or emotional well being, we assume that the trial count did not credit Bruce's testimony. *See J.F.C.*, 96 S.W.3d at 266 (noting that appellate court assumes trial court resolved any disputed facts in favor of its finding).

Considering the evidence in the light most favorable to the trial court's judgment, we conclude that the court could have reasonably credited Garza's testimony and found by clear and convincing evidence that John engaged in conduct that endangered his children's physical and

---

[5] John also asserts that Garza's testimony should be discounted because it is inconsistent with that of Sarah Cantu, the forensic interviewer who questioned Maria about her initial outcry. Specifically, John asserts that Cantu's testimony "seems to indicate that [an] outcry made closer in time to the event [is] more likely the most accurate." However, when asked whether forensic interviews "are generally more reliable if they are done closer in time to the" alleged abuse, Cantu replied, "No, not necessarily." Thus, John's argument about what Cantu's testimony "seems to indicate" is directly contradictory to her actual testimony and, therefore, John fails to demonstrate any arguable inconsistency between Cantu's and Garza's testimonies.

13

emotional well being—i.e., sexual abuse.[6] *See E.A.G.*, 373 S.W.3d at 143 (noting that sexual abuse constitutes conduct that endangers child's physical and emotional well being). Therefore, we conclude that the evidence is legally sufficient to support the court's finding that one of the statutory grounds for termination exists. *See A.V.*, 113 S.W.3d at 362. Similarly, considering the evidence in a neutral light, we determine that a fact-finder could reasonably have formed a firm belief or conviction that John knowingly engaged in conduct that endangered his children's physical and emotional well being. Therefore, we conclude that the evidence is factually sufficient to support the court's finding that one of the statutory grounds for termination exists. *See J.F.C.*, 96 S.W.3d at 266. Having determined that the evidence is sufficient to support the court's finding on subsection (E), we need not consider whether the evidence would support other grounds for termination. *See B.K.D.*, 131 S.W.3d at 16.

*Terminating John's parental rights in children's best interest*

John also asserts that the evidence is legally and factually insufficient to support the trial court's finding that terminating his parental rights is in his children's best interest. *See* Tex. Fam. Code § 161.001(2). In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). These factors include (1) the child's wishes, (2) his emotional and physical needs now

---

[6] The trial court also heard testimony that John physically and emotionally abused Alice in front of the children. Exposing a child to domestic violence, even when the violence is directed toward another parent and not the child, can constitute conduct that endangers a child's emotional well being. *See L.B. v. Texas Dep't of Family & Protective Servs.*, No. 03-09-00429-CV, 2010 WL 1404608, at *5 (Tex. App.—Austin Apr. 9, 2010, no pet.) (mem. op.); *In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.).

and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the fact-finder from finding that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27. While no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved on other grounds*, *J.F.C.*, 96 S.W.3d at 267 n.39; *see also Rios v. Texas Dep't of Family & Protective Servs.*, No. 03-11-00565-CV, 2012 WL 2989237, at *8 (Tex. App.—Austin July 11, 2012, no pet.) (mem. op.).

As discussed above, the trial court could have reasonably concluded that John sexually abused Maria and Jessica. Furthermore, Garza testified that this sexual abuse has caused Maria and Jessica to exhibit sexual behavior indicating a lack of appropriate boundaries, and thus John's abuse has caused lasting harm to his children. *See supra* n.3. John insisted that he never abused his children and asserted that their allegations of past abuse were the result of coaching by either Alice or Alice's family members. Similarly, John denied that he ever assaulted Alice, denied that he had anger-management issues, and denied that he had problems with drug or alcohol abuse.

15

This testimony is contradictory to that of several witnesses, including Garza, Carmen, Alice's therapists, and Alice, all of whom testified that John was physically and emotionally abusive. Finally, John insisted that his lack of wrongdoing is the reason that he did not engage in or complete his batterers intervention program, drug treatment program, or alcohol treatment program.

Based on this record, the trial court could have reasonably found that (1) John's acts and omissions in the past indicate that his relationship with his children was not proper, (2) John's previous bad acts were inexcusable, (3) John would not take advantage of programs designed to help him in the future, and (4) allowing Maria and Jessica to remain with John would endanger their physical and emotional safety now and in the future. *See Holley*, 544 S.W.2d at 371–72. Therefore, considering the record in the light most favorable to the court's judgment, we conclude that the evidence is legally sufficient to support the trial court's best-interest finding. *See J.F.C.*, 96 S.W.3d at 266. Similarly, considering the evidence in a neutral light, we conclude that the disputed evidence is not so significant as to prevent a reasonable factfinder from forming a firm belief or conviction that the court's best-interest finding was true. Thus, the evidence is factually sufficient to support the trial court's best-interest finding. *See id.* We overrule John's third appellate issue.

*Terminating Alice's parental rights in children's best interest*

In her sole issue on appeal, Alice asserts that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in her children's best interest. Specifically, Alice asserts that she "never was a danger to her children" and that the "children would benefit from having continued contact and visitation with their mother" and grandparents.

16

De La Pena, the Department's caseworker who was assigned to this case after Maria and Jessica were removed from Alice's care, testified that Alice had not completed her individual therapy sessions and that her attendance at therapy had been sporadic. Similarly, De La Pena testified that Alice had failed to make progress in her parenting skills courses and had failed to graduate from her batterers intervention program. Alice's counselor testified that Alice refused to take responsibility for her parenting issues, refused to acknowledge John's domestic violence toward her or sexual abuse of her children, and on several occasions Alice stated that "it would have been better to put up with the [physical] abuse than to have CPS in this case." Furthermore, Alice's counselor testified that Alice could not provide for the physical and emotional needs of her children and that she could not protect her children now or in the future.

Alice testified that she was not able to attend most of her counseling sessions because they were at an inconvenient time and place and she did not have sufficient gas money. She also testified that she did not "see eye to eye" with her counselor and that she argued with the instructors in her batterers intervention program. Alice admitted that she began dating a man during the pendency of this case who has an extensive history of violent crimes. Alice later admitted that he was a "horrible person," but asserted that she had stopped seeing him before the termination hearing. However, Alice's mother testified that she did not believe that Alice had permanently broken off the relationship.

Based on this record, the trial court could have reasonably concluded that Alice (1) could not provide for the children's safety now and in the future, (2) would not take advantage of programs designed to help her, (3) lacked appropriate parenting skills, and (4) had no excuse for her prior acts and omissions. *See Holley*, 544 S.W.2d at 371–72. Therefore, in considering the

record in the light most favorable to the trial court's judgment, we conclude that the evidence is legally sufficient to support the trial court's best-interest finding. *See J.F.C.*, 96 S.W.3d at 266. Similarly, considering the evidence in a neutral light, we conclude that the disputed evidence is not so significant as to prevent a reasonable fact-finder from forming a firm belief or conviction that the court's best-interest finding was true. Thus, the evidence is factually sufficient to support the trial court's best-interest finding. *See id.* We overrule Alice's sole appellate issue.

## CONCLUSION

Having overruled John's and Alice's issues on appeal, we affirm the trial court's judgments terminating John's and Alice's parental rights.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed: December 23, 2014

18