# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-15-00108-CV

J. R. and L. R., Appellants

v.

Texas Department of Family and Protective Services, Appellee

FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
NO. C2013-1122B, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants, J.R. ("Joey") and L.R. ("Lena"), appeal from the trial court's order finding that termination of their parental rights was in the best interest of their children, M.R. ("Michael") and R.R. ("Rachel").[1] In his sole issue on appeal, Joey challenges the performance of the children's attorney ad litem. *See* Tex. Fam. Code § 107.004. In her sole issue on appeal, Lena challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of her parental rights was in the children's best interest. *See id.* § 161.001(2). For the reasons that follow, we will affirm the trial court's decision.

---

[1] To preserve the parties' privacy and for convenience, we refer to the children, their parents and other family members by fictitious names. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

## BACKGROUND

The Department's involvement with Joey and Lena that led to its bringing suit to terminate their parental rights began in May 2013. The Department's investigator testified that the Department received a referral of neglectful supervision, which alleged "drug use and domestic violence between the parents." The Department created a safety plan at that time that prohibited Lena from any unsupervised contact with Michael and Rachel. The plan prohibited Joey from supervising Lena's conduct because of the domestic-violence allegations. Lena could not be located at the time, however, so between May 2013 and the end of July 2013, the Department was not able to offer her family-based safety services, which the Department does in an effort to avoid legal intervention.

Although the Department sought to offer Lena services once she was located at the end of July, the case escalated after "a serious incident" of domestic violence on August 26 between Lena and Joey, which also raised concerns about ongoing methamphetamine use by one or both of them. The police officer who responded to the incident testified that he was dispatched to assist in a disturbance call in which a male "had been cut by the female and also been pepper sprayed. And I believed that his firearm was in possession of this female." EMS was called because Joey was having difficulty breathing and appeared disoriented, which the officer believed was a result of the pepper spray. When the Department's investigator arrived at the home, Joey was at the hospital and the children were at a neighbor's house. The investigator spoke with Lena, who was still in the home. The investigator testified that Lena "had extreme difficulty following the conversation" and exhibited "very bizarre behavior," including "very jerky movements and rapid speech" followed by

2

a rapid change to silence and inability to follow what the investigator was saying, all of which in the investigator's experience is "very indicative of being under the influence of methamphetamines." In addition, she observed several small plastic bags with residue in Lena's car. Although Lena denied to the investigator that she had been using drugs and refused to participate in a drug test, she admitted to the investigator that she had people who provided methampetamines to her.

The Department's investigator immediately put a safety plan in place with Lena that required Lena to leave the home and not have any contact with the children. The investigator communicated this plan to Joey, who was being treated in the hospital, and Joey agreed with the plan. The next day, however, the Department removed the children based on the investigator's concerns that Joey was unable to be protective of the children. Joey had allowed Lena back in the house the night before, and Lena had threatened him. Joey also appeared to be under the influence of methamphetamines when the investigator arrived in the home, and the investigator testified that Joey had a shotgun on the floor in the living room accessible to a child of any age. The Department was granted temporary managing conservatorship of the children in August 2013.

The Department put court-ordered family-services plans in place for Joey and Lena to help them resolve their issues so that their family could be reunited. Over time, however, it became clear that reunification was unlikely due to both parents' failure to make progress on fulfilling the requirements of their plans. Accordingly, the Department brought suit to terminate their parental rights to Michael and Rachel. Michael was fifteen years old and Rachel was five years old at the time of trial in January 2015.

There was an eight-day jury trial. In addition to evidence about the family's past history with the Department resulting from domestic violence and substance-abuse issues and about Joey's and Lena's efforts to accomplish the goals on their family-service plans, which we discuss in more detail below as it is relevant to Joey's and Lena's issues on appeal, the jury heard evidence related to the children's placements and progress made since the Department removed them. The family's caseworker also testified about the Department's post-termination plans for the children. The Department planned for Michael to be adopted by Joey's father, Joey Sr., whom the Department believed would be better able to protect Michael from Lena and Joey as Michael's legal parent. The Department planned for Rachel to be adopted by the foster parents with whom she had been placed since February 2014.

The jury returned a unanimous verdict that Joey's and Lena's parental rights should be terminated as to Michael and Rachel, that the Department should be appointed managing conservator of both children, and that no possessory conservators should be appointed. The trial court ordered termination of Joey's parental rights based on the jury's finding by clear and convincing evidence that termination was in the children's best interest and that Joey had committed the following statutory grounds for termination: (1) he knowingly placed or allowed the children to remain in conditions or surroundings that endanger the children's physical or emotional well-being, (2) he engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children's physical or emotional well-being, and (3) he failed to comply with provisions of a court order that specifically established actions necessary for him to obtain return of the children. *See* Tex. Fam. Code § 161.001(1)(D), (E), (O), (2). The trial court ordered termination

4

of Lena's parental rights based on the jury's finding by clear and convincing evidence that termination was in the children's best interest and that Lena had committed the following statutory grounds for termination: (1) she knowingly placed or allowed the children to remain in conditions or surroundings that endanger the children's physical or emotional well-being, (2) she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children's physical or emotional well-being, (3) she failed to comply with provisions of a court order that specifically established the actions necessary for her to obtain return of the children, and (4) she used a controlled substance in a manner that endangered the children's health or safety and either failed to complete a court-ordered substance-abuse treatment program or continued abusing a controlled substance after completion of a court-ordered substance-abuse treatment program. *See id.* § 161.001(1)(D), (E), (O), (P), 2. This appeal followed.

## ANALYSIS

On appeal, Joey asserts only that the performance of the children's attorney ad litem was deficient. *See id.* § 107.004. Lena challenges only the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of her parental rights was in the children's best interest. *See id.* § 161.001(2). We address each party's issue in turn.

**Performance of the children's attorney ad litem**

Joey argues on appeal that the failure of the attorney ad litem during closing argument to advocate Michael's expressed desire to live with Joey was a breach of the ad litem's duty under Section 107.004 of the Texas Family Code and effectively deprived Joey of his rights to due process

and equal protection. *See id.* § 107.004 (requiring attorney ad litem for child to advise child and represent child's expressed objectives of representation in developmentally appropriate manner). In response, the Department asserts that Joey lacks standing to complain about the children's attorney's allegedly deficient performance. Moreover, because Joey does not challenge the sufficiency of the evidence supporting the jury's findings, the Department asserts that any prejudice from the attorney's closing argument could not have had an impact on the ultimate outcome of the case because the evidence was sufficient to support the jury's predicate-ground and best-interest findings. We agree.

A party "may not complain of errors that do not injuriously affect it or that merely affect the rights of others." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). Courts, including this Court, have applied this rule in parental-termination cases and have held that a parent does not have standing to complain about alleged deficiencies in the representation of his children or his spouse. *See, e.g.*, *A.E. v. Texas Dep't of Family & Protective Servs.*, No. 03-14-00414-CV, 2014 WL 7458731, at *5 (Tex. App.—Austin Dec. 23, 2014, no pet.) (mem. op.) (holding that father lacked standing to complain about trial court's decision to proceed when children's attorney ad litem was not present at beginning of hearing); *S.M.M. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00585-CV, 2013 WL 812088, at *3 n.5 (Tex. App.—Austin Feb. 26, 2013, no pet.) (mem. op.) (noting that mother in parental-termination case lacked standing to complain about trial court's failure to appoint counsel to father); *In re T.N.*, 142 S.W.3d 522, 524 (Tex. App.—Fort Worth 2004, no pet.) (holding that mother did not have standing to complain about children's attorney's performance on children's behalf or on her own behalf). Joey does not point to any evidence in the

6

record demonstrating how his own constitutional rights were violated or how he was injured by the attorney ad litem's failure to emphasize Michael's wishes in his closing argument. Moreover, the record reflects that the children's attorney ad litem made certain that Michael was able to testify in an environment in which he would be comfortable expressing his desires. No family members were present. All counsel agreed that only the trial judge should question Michael, and Michael was allowed to have his therapist with him. In her closing argument, Joey's attorney emphasized Michael's testimony about his desire to live with his dad, and if not with his dad, his grandfather, and also to live with his sister. We conclude that without evidence of injury to himself by the attorney ad litem's allegedly deficient performance, Joey lacks standing to raise this complaint, and we overrule his sole appellate issue.

**Sufficiency of the evidence supporting the best-interest determination**

Lena asserts that the evidence is legally and factually insufficient to support the jury's verdict that terminating her parental rights is in the children's best interest. The Family Code requires the jury to find by clear and convincing evidence that termination of parental rights is in the child's best interest. Tex. Fam. Code § 161.001(2). In a legal-sufficiency review, we examine all the evidence in the light most favorable to the jury's finding, assuming that the jury resolved disputed facts in favor of its finding if a reasonable factfinder could do so, but disregarding disputed evidence that a reasonable factfinder could have disbelieved. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We will conclude that the evidence is legally sufficient only if a reasonable factfinder could form a firm belief or conviction that termination of Lena's parental rights was in the children's best interest. *See id.* In a factual-sufficiency review, we review all of the evidence in a neutral light and

7

give "due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* We may conclude that the evidence is factually insufficient only if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction about the truth of the Department's allegations. *Id.*

In a parental-termination case, the best interest of the children is assessed using a non-exhaustive list of factors. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include (1) the children's wishes, (2) their emotional and physical needs now and in the future, (3) emotional or physical danger to the children now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the children by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See id.* at 372. The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not preclude the factfinder from finding by clear and convincing evidence that termination is in the children's best interest, especially when there is undisputed evidence that the parental relationship endangered the child. *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2002). While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the children. *See In re J.O.C.,* 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d at 267 & n.39.

The jury heard evidence on all of the *Holley* factors, but Lena contends that credible evidence was lacking for several factors. She focuses on the children's desires, Michael's present and future physical and emotional needs, present and future physical and emotional danger to the children, the programs available to assist her, and the stability of her home. We will begin by examining the evidence related to Lena's personal issues, and then will turn to an examination of the children's desires, the programs available to assist Lena, and the stability of her home. Finally, we will examine the evidence related to the children's present and future physical and emotional needs and the crucial factor of whether Lena's relationship with the children endangered their safety. *See In re C.H.*, 89 S.W.3d at 27.

### Lena's substance-abuse, mental-health, and domestic-violence issues

The jury heard evidence that Lena has a long history of abusing drugs, including pain medications since 2005 and methamphetamines since 2007. In addition, Lena was diagnosed with bipolar disorder in 1999, and she often forgets to take her prescribed medication, which resulted in hospitalization for suicidal and homicidal feelings. Lena's medication was changed to a shot once every thirty days beginning in February 2013 to help avoid these issues. The jury heard evidence of a long history of domestic violence between Lena and Joey in which Lena was the primary abuser. Lena testified about this and acknowledged that she had assaulted Joey on multiple occasions and that she has issues with aggression and maintaining control of her temper. The jury heard evidence that Lena was convicted of misdemeanor theft in 2008, of driving while intoxicated with a child passenger (Michael), and of fraudulent possession of a controlled substance in 2010 and that there was a pending motion to revoke her probation for the felony DWI. The jury heard evidence of

9

Lena's long history with the Department. Lena has had multiple cases with the Department since 2007, all of which concerned her domestic violence or drug use, and at trial, she acknowledged her responsibility for the Department's being involved in her life. Lena used opiates while she was pregnant with Rachel, although Lena testified that they were prescription pain pills that her doctor prescribed for her back pain when she was seven months pregnant. Rachel was premature and was born drug positive and had trouble breathing when she born. Although Lena sought treatment for her drug addictions and attended some Narcotics Anonymous or Alcoholics Anonymous meetings, she had not attended any meeting in the four months before trial and she admitted last using methamphetamines about three weeks before trial. Lena herself testified that as of the time of trial, the children's lives would be better without her and that "I have too many issues that I need to work through." We will further analyze those issues in the context of the evidence of the *Holley* factors that Lena challenges on appeal.

### Desires of the children

Lena contends that the desires of the children were not properly elucidated at trial, that Michael never stated he refused to maintain contact with Lena, and that there was testimony that the children indicated a desire to visit her during the case. The family's CPS caseworker testified about the children's desire to visit Lena during the case. The caseworker testified that when a judge allowed a visit near the holidays if the children wanted one, both children went, but that Michael only agreed to participate in the visit if Rachel was going to be there. As discussed above, the trial judge questioned Michael about where he wanted to live permanently. Michael stated that he wanted to live with Joey, but he did not mention wanting to live with Lena. Rachel was too young to testify.

10

The children's guardian ad litem testified that Michael "has expressed lack of interest [in] being reunited with his mother." Lena herself testified that she understood that Michael must feel "a lot of resentment and anger" toward her. Joey testified that Michael wanted to live with Joey Sr. and had also made statements about wanting to live with Joey. Joey testified that Rachel is "mad, angry, doesn't want to talk with Mom right now." The CPS caseworker testified that Rachel had stated to her and to Joey and Lena "that she wants to live with [her foster parents] forever" and she wants her last name to be the same as her foster parents' last name. There is no disputed evidence related to the children's desires about whether they wanted to be reunited with Lena.

### Programs available to assist the parent

As for the programs available to assist Lena, Lena asserts without citation to the record that the Department "did next to nothing to assist [Lena]" with completion of her family-service plan. The record reflects that the Department created a plan for Lena to follow to achieve the goal of family reunification. However, the CPS caseworker testified that Lena failed to complete "the majority of the tasks on her service plan" and to reach the goals. Although Lena actively participated in therapy up to a point and took responsibility for her role in the children's removal from the home, she stopped attending therapy at least two months before trial. Lena acknowledged at trial that she did not complete the court-ordered service requirements, including the court-ordered substance-abuse program, and stated, "I know that I'm in a bad place and I did not complete my program."

Lena attempted to complete two different inpatient substance-abuse programs but did not successfully complete either and relapsed shortly after leaving both. There was also evidence

11

that Lena unsuccessfully participated in two outpatient treatment programs and that her counselor for the last outpatient program discharged her unsuccessfully with a recommendation for Lena to complete residential treatment somewhere that would address both her mental-health and substance-abuse issues. In addition, there was evidence that Lena failed to: (1) maintain contact with the Department; (2) maintain stable employment; (3) complete a violence intervention program; (4) complete an inpatient drug treatment program; (5) regularly attend Alcoholics Anonymous or Narcotics Anonymous meetings; (6) submit to a hair-follicle test, despite the Department's attempts to transport her to one; and (7) remain drug free. Lena tested positive for methamphetamine on between thirteen to eighteen drug tests. None of this evidence was disputed at trial.

### Stability of the home

The State has a compelling interest in establishing a stable permanent home for a child, and stability of the proposed placement is one of the *Holley* factors. *In re A.M.*, 385 S.W.3d 74, 83 (Tex. App.—Waco 2012, pet. denied). Lena asserts that because she maintained the same residence for many years, the jury did not consider the stability of the home when making its best-interest determination. However, the evidence in the record reflects that Lena's ongoing drug use and mental-health and domestic-violence issues prevented her from maintaining a safe and stable home. While it is true that Lena and Joey owned a home together for many years, there were frequent periods when they were separated and Lena would move in with a friend or when Lena was prohibited from the family residence because of Department interventions. Lena testified that at the time of the children's removal, she was staying at the home off and on. There was evidence that the home Joey and Lena had shared was at risk of imminent foreclosure and that Lena also was facing

12

revocation of her probation for driving under the influence. In addition, Lena did not have any employment or a car at the time of trial. None of this evidence was disputed. Although Lena testified about her plan to go into another rehabilitation facility after trial that has programs and doctors who can address her mental illness and back pain in addition to her drug addiction, the jury could have disregarded this claim based on Lena's unsuccessful past history with rehabilitation and her recent drug use. *See In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015, at \*9 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.) (explaining that lack of stability for prolonged period entitled factfinder to determine that pattern would likely continue and that permanency could only be achieved through termination and adoption).

### *Present and future physical and emotional danger to the children*
### *Children's present and future physical and emotional needs*

Finally, we will examine the evidence related to the present and future physical and emotional danger to the children and the children's present and future physical and emotional needs. Lena asserts that the record lacks evidence of any present and future emotional and physical danger to the children because there was no testimony that Lena poses a current danger to the children, only evidence of her past history with the Department. A factfinder may, however, infer from a parent's past conduct endangering a child's well-being that similar conduct may recur in the future if the child is returned to the parent. *Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied). The Department presented evidence of Lena's history of exposing the children to domestic violence and her substance-abuse and mental-health issues, as well as her unstable residency in the home and unstable employment. In particular, "drug-related conduct is a significant factor to which the jury could have attached great weight in evaluating the best interests of the child[ren]." *Dupree*

13

*v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). A parent's "history, admissions, and conduct relating to drug abuse, and her inability to maintain a lifestyle free from arrests and incarcerations" is relevant to a best-interest determination. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). Although Lena took responsibility for her past actions and acknowledged at trial that her conduct had endangered the health and safety of the children, the jury was entitled to infer that her dangerous conduct might continue if the children were returned to her. *See id.*

As for the children's present and future physical and emotional needs, Lena argues on appeal, without citation to the record, that a continued relationship with her would be beneficial to Michael. The jury heard evidence that Michael had suffered head trauma while playing football in September 2012 that eventually required him to have brain surgery. After his injury, Michael began having seizures that were triggered by stress, and in particular, by the domestic violence that occurred between Joey and Lena. In addition, he spent a month in a psychiatric hospital after he and Rachel were removed from Joey and Lena's home. The jury heard evidence from the CASA representatives about some of Michael's physical and emotional needs and about the progress he made in those areas after being removed from the home.

CASA had been appointed by the court as the children's guardian ad litem responsible for making a best-interest recommendation for the children. The CASA volunteer who was responsible for contact with the children testified that Michael is doing very well in school, although he needs some extra help with math from a counselor who serves a dual role as a counselor and a math tutor. The jury heard evidence that Michael is on medication for seizures, aggression,

14

insomnia, and trembling (a side effect of some of the drugs he is prescribed). The CASA volunteer testified that Michael had made progress in the past year with his medications being decreased and his grades improving and that he was doing well in the group home where he was placed at the time of trial. The CASA volunteer also testified that Michael does not seem to feel a strong bond to his mother. The CASA case-work supervisor recommended that Lena not be allowed to have any contact with Michael. No evidence was presented by any party that a continued relationship with Lena would be beneficial to Michael.

"The need for permanence is a compelling consideration in determining the child's present and future emotional needs." *In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App—Ft. Worth 2002, pet. denied). A factfinder may consider the consequences of failure to terminate parental rights and may also consider that the children's best interest may be served by termination so that adoption may occur rather than the impermanent foster-care arrangement that would result in the absence of termination. *D.O. v. Texas Dep't of Human Servs.*, 851 S.W.2d 351, 358 (Tex. App.—Austin 1993, no writ)*, disapproved of on other grounds by In re. J.F.C.*,96 S.W.3d at 267 & n.39. The jury could have reasonably considered the evidence it heard of the Department's plans for Michael to be adopted by Joey Sr. and for Rachel to be adopted by her foster parents. The jury also heard evidence that Rachel's foster parents had previously allowed visits and phone calls between Michael and Rachel and had invited Michael to their home during the holidays. Rachel's foster mother testified that she and her husband wanted Rachel and Michael to continue to have a relationship if they were able to adopt Rachel and that they would like for Rachel to continue to have a relationship with her grandfather.

15

Viewing the evidence related to these and the other *Holley* factors in the light most favorable to the jury's finding, we conclude that the evidence is legally sufficient to prove that termination of Lena's parental rights was in the children's best interest. *See Holley*, 544 S.W.2d at 372. Having given due consideration to the disputed evidence in the case, we reach the same conclusion regarding the factual sufficiency of the evidence. The only disputed evidence in the case related to discrepancies around some specific events, including Lena's testimony that the plastic baggies that the Department's investigator saw in her car were used for beadwork, not drugs. There was no disputed evidence related to the best-interest factors that Lena challenges on appeal. Any evidence favoring a decision contrary to the jury's decision "is not so significant that no reasonable juror could have formed a firm belief or conviction" that termination of Lena's parental rights is in the best interest of the children. *See In re K.M.L.*, 443 S.W.3d 101, 117 (Tex. 2014); *In re J.F.C.*, 96 S.W.3d at 266. We overrule Lena's sole appellate issue.

## CONCLUSION

Having concluded that Joey lacks standing to complain about the children's attorney ad litem's performance and that sufficient evidence supports the jury's finding that terminating Lena's parental rights was in the children's best interest, we affirm the trial court's order of termination.

16

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   July 30, 2015

17